Case 25-1321, Daniel Grady et al. v. John Cratsenburg et al. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. May it please the court, my name is Amanda Raubieri and I represent defendants appellants John Cratsenburg and Austin Pearson. I've reserved three minutes for rebuttal. This case arises out of a May 2020 incident that was captured on body cam footage. The plaintiffs in this case, Shatina and Daniel Grady, approached a house where law enforcement, including the two defendants here, were actively investigating a shooting. On their approach, plaintiffs came close to the fence line and were positioned between the police car and the target house. Defendants asked them to back up, plaintiffs did not back up. They were filming and they were also verbally engaging with the police. The defendants told them that they could continue to film, but they needed to move from the fence line to the house next door. They ultimately refused over a dozen commands to back up and defendants arrested them. The district court here erred when it denied defendants qualified immunity on plaintiffs First Amendment retaliation claim. First, defendants did not violate clearly established law. The First Amendment does not give the plaintiffs free reign to film an act of police and shooting in any manner they choose. And neither the plaintiffs, even though they bear the burden, nor the district court's opinion, identified any case that puts it beyond debate that defendants actions here in ordering plaintiffs to back up to the next house down exceeded the bounds of the First Amendment. Defendants are entitled to qualified immunity on this issue alone. Nevertheless, the district court also erred that there are genuine issues of material fact as to plaintiffs underlying First Amendment retaliation claim. To begin with, the order to back up and continue filming from the next house down was a reasonable time, place, and manner restriction. Speakers are not entitled to their best means and the order to back up to the next house is nearly tailored to a substantial government interest and left the Grady's ample opportunity to continue filming and engaging with the police from next door. I thought the district court said with respect to the time, place, and manner restriction that there were further factual development that needed to happen with respect to whether it was indeed a time, place, or manner restriction or something more akin to a complete bar on the ability to film or engage with police. I had thought that wouldn't be before us permissibly under our limited jurisdiction on your appeal of the denial of QI. So how do we have jurisdiction over kind of those fact-based disputes that might be live in the district court's view? Yes, and I think, so this court does have jurisdiction to the extent those factual disputes, whether or not they amount to a genuine dispute of material facts or whether or not those facts are material. And so in terms of the reasonable time, place, and manner restriction, based on the evidence shown in the video, there is no genuine dispute of material fact as to whether or not the order to back up was reasonable. But even if the court were to determine that there is an open fact question or that the court lacks jurisdiction to review the district court's finding with respect to that particular issue, plaintiff's claim also fails at the causation element. And here, the district court correctly determined that defendants had probable cause to arrest the plaintiffs after they refused over a dozen commands to back up. Under the Supreme Court's decision in Neves v. Bartlett, the Supreme Court held that a arrest supported by probable cause will, in general, defeat the causation element of a First Amendment retaliation claim. Can we reconsider the district court's probable cause determination? First of all, I think that the district court correctly determined that there is probable cause. I think, to Judge Herndorfer's point, I believe that that may fall outside of the court's jurisdiction to the extent that the court concluded, made a factual determination that a reasonable person would have had enough facts to assume that the Grady's were guilty of a crime. So... And those facts, just so I'm clear, that I understand the district court to have rendered a few kind of factual findings that I think are potentially relevant to here. And the first is that there was a rudimentary perimeter set up around the kind of house where they thought the shooter might be, and that the Grady's were within the rudimentary perimeter, and that, third, the bystanders across the street were, by contrast, outside the perimeter. Are those all three factual findings you understand the district court to have made? Yes, those are factual findings the district court made. Okay, so you're saying if, to the extent probable cause rested on, for example, the Grady's being inside the perimeter and ignoring commands, that is outside of our current review?  The court cannot review factual findings as factual findings, right? And the court can review them to the extent that they turn on a legal determination. So I think the pure facts, as the district court found them, that the Grady's were between the police car and the house, and that the other spectators were behind the police cars, I think those do fall outside of the court's jurisdiction. But I think the court correctly determined, and I think, I mean, those facts, I understand the court's jurisdictional question. I think those facts are also pretty plainly viewed on the undisputed video evidence. And I think the district court also drew the correct legal conclusion from those factual findings that the Grady's arrest in this circumstance was supported by probable cause.  I have a factual question. So as I understand it, after the Grady's arrests were effectuated, there were bystanders that were then engaging with police and saying highly negative, making highly negative commentary towards the police during the course of kind of the arrest, including calling them pigs, saying y'all should be shot, things like that. Was anybody else arrested on the scene, to your knowledge, following the Grady's arrest? Not to my knowledge, no. Okay. And in your view on the causation point under the Neves exception, what was the district court's error in assessing the similarly situated requirement? If you could put that into just a few sentences. Yes, so the district court held that there is a narrow qualification to this general rule about probable cause. Emphasis, it's a narrow qualification. So the district court here drew the correct factual determinations based on the video evidence, finding that the Grady's stood in between the police car and the house, while the other spectators, which you can see kind of around minute 26 of the videos as Pearson and Kratzenberg are walking around, stood across the street and behind the police cars. The district court, the legal conclusion that the district court drew from those factual findings was that at summary judgment, that was sufficient to raise a fact dispute as to whether or not those individuals were similarly situated enough under the Neves description. That was the wrong legal conclusion. The district court's factual findings and the evidence viewed in the light depicted in the video shows a material distinction between where the Grady's were positioned. There are no other spectators positioned between the police car and the target house. And the only other potential comparators in the video as the district court found are behind those police cars. And significantly, there's record evidence that you have two officers, at least one officer with a long gun on the other side of the street as the officers are making contact with the target house. And that distinction enough renders those potential comparators not sufficiently similar for purposes of the Neves exception. So there's no, the district court erred when it concluded that there is a genuine dispute of material fact on whether or not- Do these offer any other sort of objective evidence? I know the district court thought this case was akin to Gonzales v. Trevino. Were the Grady's relying, as you understood it, exclusively on kind of the presence of other bystanders filming? Or was there other objective evidence about, for example, whether this type of offense under Michigan law is frequently arrested or not? No, there's no evidence of that. I think that's where the Gonzales case is interesting because that was a kind of a unique set of facts where there was a prosecution for removing government files. And the Supreme Court in Gonzales v. Trevino concluded that the Fifth Circuit had erred in requiring a search for virtually identical comparators. And in that situation, there's objective evidence looking outside of how frequently there are arrests for that particular crime. And the Supreme Court talks about this in Neves as well when it mentions jaywalking as an offense that might potentially give rise if there are other comparators to this narrow qualification under Neves. But to answer your question, no, there is no other evidence outside of what we see in the video evidence and the testimony in the depositions and preliminary exam in the criminal trial. My last question on that would be, when you say the comparators aren't sufficiently similarly situated, is that because there's no probable cause to arrest them for any crime in contrast to the fact that there was probable cause to arrest the Gradys for being within the perimeter and defying officers' commands? Or what makes them not sufficiently similarly situated? So as the officers testified, and is in the record evidence that the Gradys, I think the positioning of the Gradys between the police car and the house as the district court found puts them at an unsafe distance from the police investigation, which is why they were asked repeatedly to back up by the defendants. Those other spectators are behind the police cars, and I think that's really the significant difference. There's no record evidence that those spectators were also asked to back up. There's no evidence that those spectators stood at an unsafe distance from the police, from the active investigation into the shooting at the Target House. You know, I thought in the video that I saw that Officer Kratzenberg was asking some of the other spectators to back up. But am I incorrect about that, in that they did not, they may have been out, they were farther out than the Gradys were. But there was some request- After the Gradys, because things get a little chaotic after the Gradys are arrested, and there are, you hear Kratzenberg as well, some of the other officers asking some of the other spectators to back up. So I suppose I should clarify and say prior to them going to arrest the Gradys, at least the other two spectators and the spectators that plaintiffs have pointed to as potentially, as the sufficiently similar comparators, there's no evidence in the video, at least as I've watched it a bunch of times, no evidence that I can see that they were asked to back up. Okay, I see red lights on, but does the record reflect whether those other sort of comparators actually complied with the officer, whether it was Kratzenberg or someone else's request to back up? Is there any- Are you referring to the spectators after the arrest? Spectators, after the arrest, yeah. They're, outside of the video evidence, there is no, only what you can see in the video, and it's the only record evidence. And you say the record reflects that those requests of the other spectators was made after the arrest. There were no requests to back up before the arrest of those other- I have not heard it in the video. Okay. Okay, thanks. All right. Thank you, Counselor. Thank you. You have your rebuttal time. Good morning, panel. Thank you for this time. My name's Attorney Trovia Starr. I'm representing both Daniel and Grady, Daniel Grady and Shatina Grady. This is a case where appellants have, at various times, miscategorized certain things, overlooked certain important facts, but most importantly, they have plainly and boldly stated that part of the reason for the arrest was because of speech. They've stated that at trial multiple times. They stated that at the exam multiple times. That part of the reason for the arrest was because of speech. Now, we know generally, speech is, you cannot be arrested for criticizing the police. But, Counsel, in Neves, the point, why this is so hard is because, as the Supreme Court said in Neves, speech often is a permissible basis to effectuate an arrest when there's otherwise probable cause. And so, the fact that there was speech and that speech potentially informed whether the officers believed the Grady's were interfering or defying lawful orders, I don't think that gets you over the finish line. No, it doesn't. And that's where I was going. That was my next point. That's what I said generally, right? I like to think of it as a bullhorn situation where if the police are out somewhere and they're trying to talk to someone, imagine someone coming up with a bullhorn and sounding the alarm. The police wouldn't be able to do their job because that speech, even if they were talking on the bullhorn, would disrupt what the police are trying to do. The speech at issue in this case, is it the filming or is it what the Grady's were saying? You know, where's your supervisor? Get a warrant, those type of things. I believe it's both, but I believe the district court judge in a ruling focused on the latter, the words, mainly by Shatina Grady, that that was the motivating factor for the arrest. One potential evidence to support that is Daniel, excuse me, Sergeant Kratzenberg saying, after they get finished doing their job, their job was done and completed, saying she needs to go. Remember their claim is that, hey, we said back up, they didn't back up. So if it's she needs to go, why is it not they need to go? They didn't back up. Instead he said she needs to go. That's one thing the district court judge pointed out in her opinion is puzzling. If you're saying, hey, we arrested them for backing up. But as we saw in the record, again, they testified, that's where this comes out at, that, hey, we arrested the Grady's because of speech. But then even that point gets a little puzzling because we know that Daniel Grady said some words, but very little words. So why was his speech disruptive if you were to view it as that? And I think it's... Who are the similarly situated comparators that you're pointing to under this sort of needs exception? From watching the body cam video, when the officers crossed the street, again, we're talking about a street and this street is not a wide street, it's only a two lane street. When they cross the street, you see someone else filming. Right across the street, they actually walked past that person. Didn't say backup, didn't say nothing. To further accentuate the point of that particular person being a similarly situated person, the officer said that they crossed the street, went down the street briefly, then crossed the street again to get out of the zone of danger, essentially, of possible gunfire from the possible shooter being inside the house. Well, if that's the case, that means my clients, Daniel and Shatina Grady, are outside the zone of danger. Furthermore, during the trial... I don't follow that point. What do you mean they were outside the zone of danger? I see the video where the officers, when they're coming to effectuate their arrest, they walk around behind the police cars and they come up on your clients and I still see a police car behind them. So explain how they're outside the zone. Because the officers testify... They testify in terms of explaining why they did that. Why did you cross the street, go down the street, and cross the street to get to the clients? The officer in charge, Sergeant Crasenberg, then Sergeant Crasenberg, he's a lieutenant now, stated that we did so to get out of the pathway of fire, potential fire, gunfire. Those were his words. So if you make those movements to get out of the potential pathway of gunfire, and also too, he said, we made the arrest, we made the arrest safely, we did this to be safe. Well, where are my clients then? Where is Mr. and Mrs. Grady? Well, they're within the perimeter, which is what the district court found, right? And aren't you, you didn't file a brief other than, in this case, other than to say, we embrace fully the district court's opinion. So it seems as though you then have to take some of the fact findings with respect to the presence of the perimeter, the Grady's presence inside the perimeter, the fact that the bystanders were, in contrast, outside the perimeter, and that there was probable cause to arrest the Grady's. It seems as this case comes to us, we have to take all of those. Yes. Going to Judge Mathis's question, that person counts because, again, they're right across the street, right? Was there probable cause to arrest that person on the district court's view of the statute? If it's a claim of being too close to the zone of danger, I would say yes. That's not what the district, the district court said there was probable cause under the Michigan statute because there was a defiance of the officer's lawful orders, and that was the refusal to back up outside of the perimeter. So if that's the probable cause to arrest the Grady's, was there probable cause to arrest any of the other bystanders? Yes, that's my answer. If they're within the zone of danger. If they're within the zone of danger. Now, there was a... Different question that, again, following up on Judge Hermodolfo's question, is violating the lawful order. And again, seeing the video, I only heard an order made to the Grady's. I didn't hear an order made to anyone else. So how would there be probable cause to arrest those individuals across the street if there's no order made for them to back up or do anything? At the trial, this was gonna be our second point to answer this question. Deputy Buffa stated that there were people all around. There were people all around and that the scene was very chaotic. What drew the officer's attention in this case was that they just simply looked left and saw that my clients were standing right there. And then that's when the command started and then that's when the back and forth started. Command started before any speech was made. Am I right about that? Absolutely. Well, if you were to view filming as speech, as the district court judge correctly stated, viewed in light and was favorable to the non-moving party, my clients were filming first and then they looked. It was a flash. The flash on the phone. They see the officers see the flash. One officer sees the flash, looks to the left and then says, okay, back away. Okay, filming's not before us though, right? Because the filming aspect of this case is no longer, is not before us in this posture. Do you, am I right about that? I would agree and that's what I was saying about the speech part of it, right? Speech can be disruptive in certain situations to where it's not protected conduct, right? We saw that in Nevis where the person went in between the police officer and the police officer, the person that was being questioned by the police officer. That speech is no good. You're disrupting the police officer's duties. We also see that in King, King versus Ambus where the officer was saying, hey, this person is telling this person I'm interrogating to not talk to me, but the issue is that he's drowning me out, quote, will speak over me, right? Will speak over me and therefore I can't actually do my job. Here, that's not the case. The officers were able to do their job. They were able to stay at the perimeter. They were able to ask multiple times. They asked multiple times to gain entry into the house. The homeowner in the video says, yeah, you guys can come in, but only two. Only two people can come in. So they were able to do their job. That's the district court judge's opinion. That's where the speech comes into play at where it's like, well, we know that the officers testified that part of the reason for the arrest was because of speech in addition to felony backup, but we know it was also too because of speech. If this speech is viewed in the light most favorable to a non-moving party as protected speech, then the appellant's argument gets a little difficult to see, gets a little difficult to overcome because if it's protected speech, why are the officers saying, hey, we arrested them because of their speech? Well, I'm struggling, counsel, and I'll just allow you to respond to this. My understanding of the Neves exception, and I think that's where we are because there was probable cause, is that it's pretty narrow, and I have looked and I have not been able to find another case where someone has satisfied the similarly situated requirement without other comparators that are engaging in the same type of criminal conduct that would have supported probable cause to arrest. And so if I think that there wasn't conduct like the Grady's here in this case by the other bystanders, how do you satisfy the similarly situated requirement? That's kind of the core of my problem. Yes, and frankly with Neves, this is the ongoing conversation with this limited exception. How is it applied? Who is it applied to? So on and so forth. I look at the simply the language of Neves with the exception, and it's similarly situated individuals are not doing the same, not doing the protected conduct. That's why I go back to the speech part, right? I'm not sure if you necessarily need the similarly situated people to be violating the law as well. I don't know if that's a necessity. I thought the theory of Neves was that, okay, you have many people at a scene, they're all committing the same kind of criminal conduct. And because there's probable cause to arrest, that's where Neves triggers. And the way we can kind of suss out whether it was speech as opposed to the probable cause criminal conduct is they're only taking some people and arresting them. And those people were making speech and others weren't. I'm just not sure how that inference works when there's only one set of folks who were engaging in criminal conduct. And those people were arrested. Well, that's where I would go to previous questions when Appellant was up here about the individuals who were told to back up after the arrest. That is almost like a state of mind. None of those individuals were arrested. When I believe you asked the question, was anyone else arrested outside the greatest? No, no one else was arrested outside the greatest. So I go to that point where, okay, other people were told to back up and didn't. I believe in the video, you see one person step closer, I think laugh, I think, while the arrest is being made. You had, again, going back to Deputy Buffer's testimony about the scene being chaotic, that there were many people around the perimeter. No one else was told to stay clear of the perimeter. Again, the reason why I brought up looking left, in order to say that there's no one else near the perimeter, you would have to, what, first look. They never did that. So to say that, okay, definitively, that the greatest are the only ones inside the perimeter, that may necessarily not be true, because they never, the detectives, excuse me, the deputies never checked to see if anyone else was inside the perimeter. They just happened to look left because of the flash, because of the filming. Thank you. Briefly, your honors, unless there are further questions. I think just on a factual point on the chaotic scene and the people who were around the officers following the arrest, once the defendants here go to arrest the Grady's, they end up violently resisting arrest. Mrs. Grady bites Deputy Pearson so hard on his arm that she breaks the skin. So the facts on the ground change dramatically once they go to arrest the Grady's and the scene is chaotic. I think the people close to the Grady's and the officers while the arrest is underway, I think it's a fundamentally different circumstance than prior to the arrest when they are searching for the shooter and have the house surrounded. Was there a point at which the search for the shooter within the home, I know at some point there's testimony about we locked it down to go get a warrant. Like was the perimeter ever dissipated and when did that happen? I can't say exactly when it happened. They did, the officers did eventually get consent to search the house. They did not find the shooter in the house, but they did and you can see this at the end of both body cam footage. In the aftermath of the Grady's arrest, one of the officers spots somebody who matches the shooter's description and they give chase. They're not able to actually apprehend that suspect. So I don't know exactly when the perimeter dissipated, but the search for the shooter was going on this entire time between negotiating entry into the house and then when officers in the sort of chaos surrounding the Grady's arrest actually spot an individual who matched the victim's description of the shooter. And then just to take a step back from the merits, I think to turn to the other prong of the qualified immunity analysis, it clearly established it's plaintiff's burden to come forward with a case that puts it beyond debate, that the order to back up was not a reasonable restriction on plaintiff's First Amendment rights to both film and criticize the police. They have not done so and neither does district court point to a case, and I also have not been able to find a case that would put any reasonable officer on notice that the order to back up from the fence line to the next house down violated the First Amendment in this case. I don't think that's the issue though, right? It's a retaliatory arrest. It's not the initial command to back up. It's the retaliation by arresting for critical speech of the police. So, I mean, isn't that at least clearly established that police can't do that? I actually find it quite hard to map NIEVS onto prong two of the clearly established inquiry, but that's, I think, a separate problem. Yeah, I think it is difficult to map on to the second, but I think it goes to the elements of a retaliation claim include protected conduct, causation, and adverse action. So I think under the first prong of the retaliation test that if the order to back up is a reasonable restriction on the plaintiff's right to film and criticize the police, then it is relevant whether or not the order to back up was a reasonable restriction, because then the retaliation claim fails at the first element. Thank you, counsel. Thank you. Again, I thank both sides for their arguments. The case will be submitted.